IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIAN NLANDU MBENGO, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 06-1208 |
| | ) | |
| v. | ) | Judge Arthur J. Schwab |
| | ) | Magistrate Judge Amy Reynolds Hay |
| WARDEN MR. MILLWARD, | ) | |
| Moshannon Valley Corr. Center, | ) | |
| | ) | |
| Respondent. | ) | |

REPORT AND RECOMMENDATION

I.     RECOMMENDATION

It is respectfully recommended that the Section 2241 habeas petition be dismissed.

II.     REPORT

According to Christian Nlandu Mbengo ("Petitioner"), on or about November 16, 2005,

he pleaded guilty in the United States District Court for the Northern District of Georgia ("the

Sentencing Court") to various fraud and theft charges. The Sentencing Court sentenced him to

serve 70 months imprisonment and ordered him to pay a special assessment of $300.00 and

restitution in the amount of $878,126.50.

Petitioner is currently incarcerated at the Moshannon Valley Correctional Center

("MVCC"). He contends that personnel at MVCC, in an effort to assist Petitioner to meet his

financial obligations while housed therein, improperly "set up [an] installment payment of

$25.00 per quarter and deduct the funds from money sent from [his] family or his inmate trust

funds, thereby exposing [him] to financial hardship and creating cruel and unusual punishment,

constituting a miscarriage of justice." Dkt. [7 ]at 4. He also complains that the Sentencing

Court, which is outside this Circuit, failed to comply with precedent from this Circuit, forbidding

a court to delegate to the Bureau of Prisons ("BOP") the scheduling of payments on the

restitution. Petitioner names the warden of MVCC as the respondent and he seeks an order from this Court directing MVCC to cease collecting the $25.00 installment payments from him.

**Factual and Procedural History**

In the Sentencing Court, Petitioner was charged by indictment with criminal activity which occurred from at least November 2002 until March 16, 2005.[1] <u>United States v. Mbengo</u>, No. 1:05-CR-125 (N.D.Ga. Dkt. 1 - Indictment)(Available on PACER). He entered into a plea agreement wherein he agreed to the following:

> 9. The defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court for eventual disbursement to the appropriate account and/or victim(s). The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, he agrees that the custodial agency and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect the fine and/or restitution obligation by set-off program payments, execution of non-exempt property, and any other means the Government deems appropriate.
>
> . . . .
>
> 15. LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure from the otherwise applicable sentencing guideline range.

<u>Id</u>. (Dkt. 81 at ¶ 9, executed by Mr. Mbengo on September 6, 2005). On November 17, 2005, a judgment and commitment was formally docketed in which Petitioner was sentenced to a 70 month term of imprisonment to be followed by a three-year term of supervised release. As part

---

[1] The dates of the criminal activity are important because the Mandatory Victims Restitution Act ("MVRA"), which formed the basis for the Sentencing Court's order of restitution, applies only to criminal activity that occurs after the effective date of the MVRA, i.e., April 24, 1996. <u>See</u> <u>United States v. Edwards</u>, 162 F.3d 87 (3d Cir.1998).

of the judgment, the Sentencing Court stated: "It is ordered that the defendant shall pay the special assessment of $300.00 which shall be due immediately." Dkt. [20-2] at 8. In addition, the Court ordered as follows:

> The defendant shall make restitution to the victims jointly and severally with the co-defendants in this case[.]
>
> The restitution shall be paid in full immediately. Any payment made that is not payment in full shall be divided proportionately among the persons named. . . .
>
> The defendant shall make restitution payments from any wages earned in prison in accordance with the Bureau of Prisons Financial Responsibility Program. Any portion of the restitution that is not paid in full at the time of the defendant's release from imprisonment shall become a condition of supervision and be paid at the monthly rate of not less than $150.00.

Dkt. [20-2] at 12.

On April 24, 2006, Petitioner was designated to his current place of incarceration, i.e., MVCC. Dkt. [20] at 2. On September 8, 2006, while incarcerated at MVCC, Petitioner signed a contract in which he agreed to pay $25.00 per quarter pursuant to the BOP Inmate Financial Responsibility Program ("IFRP"). Specifically, Petitioner agreed as follows:

> I understand that my failure to meet these obligations could affect my future security/custody scores, UNICOR placement, parole consideration (if applicable), and community programs, including furloughs and CCC placement. In addition I understand that interest and penalties accrue with unpaid restitution and fines.
>
> I agree to submit payments toward the financial obligation indicated on the front of this form, in accordance with the payment plan outlined below. I agree to follow this payment plan until the financial obligation is satisfied.

Dkt. [20-2] at 17. The "financial obligation indicated on the front of this form" was specified to be $878,426.50. Dkt. [20-2] at 16, ¶ 8. Reading this contract in light of the judgment and commitment, it is clear that the financial obligation indicated on the front of the contract, i.e., the $ 878,426.50, includes not only the amount of restitution, i.e., $878,126.50 but also the $300.00 special assessment.

Notwithstanding the fact that Petitioner consented to the BOP's taking money out of his BOP account in order to satisfy his legal obligations, he filed the instant Section 2241 habeas petition challenging the actions of the BOP. Dkt. [6]. In addition, he filed a brief in support of his habeas petition. Dkt. [7]. On June 11, 2007, the Respondent filed an answer, Dkt. [20], denying that Petitioner was entitled to any relief, citing, inter alia, several unpublished cases from the Court of Appeals for the Third Circuit. On June 21, 2007, Petitioner filed a traverse. Dkt. [21].

Subsequently, the Court asked the parties to address the relevance, if any, of United States v. Corley, 500 F.3d 210 (3d Cir. 2007). Accordingly, Respondents filed a supplemental brief, Dkt. [25], and Petitioner filed his supplemental brief, Dkt. [26].

In Corley, the United States District Court for the Eastern District of Pennsylvania, entered an judgment of conviction which directed the defendant to pay, inter alia, restitution and which directed that "payment [was] to begin immediately." Id., at 224. The Court further ordered that the defendant make payments on his restitution and fines from any wages he may earn in prison in accordance with the BOP's IFRP with the restitution and fine being due immediately with any balance after release being paid at a rate of no less than $100.00 per month. The Court of Appeals on direct appeal vacated the restitution order and remanded for the District Court to resentence with respect to the restitution, finding that the District Court's order had impermissibly delegated to the BOP, its core judicial function of setting a schedule of repayment for restitution and finding that the plain language of the MVRA contradicts and thus overrides the BOP's IFRP regulations permitting it to require periodic payments from prisoners' accounts to pay restitution. Id., at 225. The Corley Court further held that a sentencing court cannot order restitution to be due immediately if the defendant cannot pay immediately because that would be

tantamount to delegating the court's duty to set a schedule of payments to the BOP.  Id., at 225 - 27.

It is likely that if Petitioner's Sentencing Court were located within this Circuit and if Petitioner's Sentencing Court's order had been issued after August 31, 2007, the date of the Corley decision, and if Petitioner had appealed the order to the Third Circuit, the Sentencing Court's order would have suffered the same fate as the order in Corley.   However, this involves a lot of "ifs" and it does not necessarily follow that, just because subsequent precedent of the Third Circuit decided the issue differently from another Court, the BOP is not bound to enforce, pursuant to its statutory obligations and rights, Petitioner's legal debt, arising from the final order of the Sentencing Court.  Because this court finds that the BOP, when confronted with a final unappealed order of a Court, which imposed financial obligations upon Petitioner, was without authority to look behind the order and/or disregard the order but instead had ample authority to enforce the debt, and, indeed was obliged to do so, Petitioner's Section 2241 petition must be dismissed.

**Discussion**

Although not entirely clear, it appears that Petitioner is making two distinct attacks in this case.  The first attack appears to challenge the Sentencing Court's action in imposing the sentence of restitution and consists of two arguments, the first of which concerns the allegation that the Sentencing Court impermissibly delegated to the BOP its authority to determine the amount and timing of restitutionary payments to be made by Petitioner.  See, e.g., Dkt. [7] at 1 ("District Courts lack authority to delegate to the probation officer the final authority to determine the amount and timing of restitutionary installment payments . . . .").  The second argument challenges the Sentencing Court's alleged failure to consider the factors which

Petitioner contends are required to be considered.   Dkt. [7] at 5 ("It is crystal clear that the Northern District of Georgia, Judge Thomas W. Thrash, Jr. did not consider the above factual matters before imposing the restitution.").   In contrast to the first attack, the second attack is aimed at the execution of Petitioner's sentence because it attacks the  BOP's taking money out of Petitioner's account to meet his financial obligations that arise from his sentence.

        1.   The Petition is improper because Petitioner waived his right
            to bring such a petition.

Because in his plea agreement, Petitioner waived his right to bring a challenge to his sentence, specifically waiving his right "to collaterally attack his sentence in any post-conviction proceeding on any ground," and because Petitioner has not met his burden to show that the waiver was invalid, the petition should be dismissed, at least with respect to his attack on his sentence as imposed.[2]  Parke v. Raley, 506 U.S. 20, 31 (1992)("Our precedents make clear, however, that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant.");  Von Moltke v. Gillies, 332 U.S. 708, 737 (1948)(Burton, J., dissenting)("In now attacking collaterally the unappealed and deliberate judicial proceedings of 1944, a heavy burden of proof rests upon the petitioner to establish the invalidity of her original plea and waiver.").  Accordingly, the petition should be dismissed on this ground alone, at least with respect to Petitioner's attacks on the sentence as imposed.  See, e.g., United States v. Simon, No. CRIM.A. 04-43, 2005 WL 3541133 (E.D. La. Oct. 3, 2005).[3]

_____

[2]   It is not clear to this Court that Petitioner also agreed, in his plea agreement, to waive any challenge to his sentence as executed, a distinction discussed more fully below.

[3]   The Simon Court held as follows:

        Defendant also, however, challenges the propriety of the Court's order on

2. <u>Section 2241 Petitions cannot attack the sentence as imposed</u>.

As to the first attack, where both arguments challenge the sentence as imposed, those claims are not cognizable herein. As a general rule, a petition under Section 2241 is properly brought where the petitioner is seeking to challenge the carrying out or the execution of his sentence (<u>e.g.</u>, the calculation of good time credits, the running of the sentence, the calculation of the ending date, <u>etc.</u>) and not the sentence as imposed. <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484 (1973); <u>Gomori v. Arnold</u>, 533 F.2d 871, 875 (3d Cir. ), <u>cert</u>. <u>denied</u>, 429 U.S. 851 (1976) ("Furthermore, the United States Courts of Appeals have consistently held that a challenge to a sentence as executed by the prison and parole authorities may be made by petition for a writ of habeas corpus [i.e., a Section 2241 petition], whereas a challenge to the sentence as imposed must be made under 28 U.S.C. § 2255."); <u>Thomas v. Miner</u>, 232 Fed.Appx. 207, 208 (3d Cir. 2007)("In addition, federal prisoners may proceed under § 2241 when their challenge is directed to the execution, as opposed to the validity, of their sentence."). Here, clearly Petitioner's two arguments go to the sentence as imposed and hence, cannot generally be brought via a Section 2241 petition. <u>See</u>, <u>e.g.</u>, <u>Easton v. Williamson</u>, Unpublished, 2008 WL

_____

restitution. She argues that the Court improperly delegated the task of imposing a schedule for the payment of restitution during defendant's incarceration to the Bureau of Prisons.

   A restitution order imposed at sentencing is a part of the defendant's sentence. . .

   As the Court has previously found, defendant knowingly and voluntarily waived her right to appeal her sentence on any ground unless the sentence was in excess of the statutory maximum or was an upward departure from the applicable guideline range. That appeal waiver was sufficiently broad and unambiguous to also bar a challenge to the Court's restitution order. Accordingly, the Court finds that defendant waived her right to challenge the Court's restitution order, and it will not consider the merits of her claim.

<u>Simon</u>, 2005 WL 3541133, at *3 - *4.

587859, at *1 (3d Cir. March 5, 2008)("We agree with the District Court insofar as it concluded that Easton's claim does not fall within the purview of § 2241, because he does not challenge the execution of his sentence, but rather, he challenges the failure of the sentencing court to follow the strictures of the MVRA.");  Alveras v. Snyder, 205 F.3d 1344 (Table), 1999 WL 1059831, at *1 (8th Cir. 1999) (rejecting the viability of a Section 2241 petition and noting that "Although Mr. Alevras frames his action as one attacking the manner in which his sentence is being executed, we view it as an attack on the legality of the sentencing court's decision to delegate authority to the BOP to set the amount and timing of his payments. We note the merits of Mr. Alevras's claim may require interpreting the sentencing court's order, which is a task best left to the sentencing court.  We conclude this matter can be raised only through a motion under 28 U.S.C. § 2255 in the district court that sentenced Mr. Alevras.");  Hudson v. True, No. 97-3347, 1999 WL 1285832, at *2 (D.Kan. Dec. 23, 1999)("Petitioner cannot complain in this § 2241 action as to the amount of the fine imposed by the sentencing court or the fact that the sentencing court did not specify installment payments, since such claims are a challenge to the sentence itself and should have been raised on direct appeal . . . .").

There is one narrow exception to the rule that a Section 2241 petition cannot be brought to attack a sentence as imposed, and that exception applies where a Section 2255 motion is inadequate or ineffective to test the validity of the sentence/conviction.  Moreover, it is a petitioner's burden to show that a Section 2255 motion is inadequate or ineffective so as to justify resort to the Section 2241 petition.  Charles v. Chandler, 180 F.3d 753, 756 (6th Cir. 1999)("It is the petitioner's burden to establish that his remedy under § 2255 is inadequate or ineffective.")(per curiam).  In order to show that Section 2255 is inadequate or ineffective, a petitioner must show that there would be a "complete miscarriage of justice" if he were not

permitted to bring his claim via a Section 2241 petition.  See In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997) (applying miscarriage of justice standard to federal prisoner under Section 2255). Petitioner has not carried that burden.  Given the allegations of the Section 2241 habeas petition and its accompanying memorandum of law, and the procedural history of Petitioner's failure to utilize the available means to attack his sentence as imposed, i.e., to attack the restitution order in the Sentencing Court at the time it was imposed and/or via a direct appeal or otherwise, and the fact, as explained below, that the BOP is entitled to collect monies from his account to pay debts owed, and the fact that the Sentencing Court could have imposed a payment schedule identical to that imposed by the BOP, Petitioner cannot, as a matter of law, make the required showing of a complete miscarriage of justice so as to permit him to bring this Section 2241 petition to challenge his conviction.

The Court notes that a Section 2255 motion is not an available means by which to solely attack the restitution portion of a sentence such as Petitioner does herein.  United States v. Walker, 149 Fed.Appx. 55, 57 (3d Cir. 2005)("Furthermore, numerous courts have recognized that '§ 2255's language clearly and unambiguously limits its applicability to defendants seeking release from custody.  It is not available to those, like the defendant, who challenge only fines or restitution orders.'  United States v. Kramer, 195 F.3d 1129, 1130 (9th Cir. 1999) (citing cases). Thus, even if Walker were challenging the terms of the restitution order per se (which he clearly is not doing), he could not raise that claim in the sentencing court by § 2255 motion."); Easton v. Williamson, Unpublished,  2008 WL 587859, at *1 (3d Cir. March 5, 2008)("Ordinarily, challenges to a restitution order are not cognizable under § 2255.").  Further, this Court has found no case which has held that merely because a Section 2255 motion is not available to attack solely the restitution aspect of a sentence as imposed (versus, the sentence as executed), then a

Section 2255 motion is inadequate or ineffective and so a Section 2241 petition is available and we decline to so hold. See Trader v. United States, __ Fed.Appx. __, 2008 WL 2278493, at *1 (3d Cir. June 3, 2008)("We also agree with the District Court insofar as it concluded that Trader's claim does not fall within the purview of § 2241. Trader did not challenge the execution of his sentence. Instead, he essentially alleged that the sentencing court failed to follow the strictures of the MVRA.").

Alternatively, even if Petitioner had not waived his right to attack his sentence as imposed and even if Section 2255 were inadequate or ineffective such that Petitioner could bring the present attack via a Section 2241 petition, his claims would still fail. Petitioner merely claims that the Sentencing Court failed to abide by statutory requirements of the MVRA. A claim, such as Petitioner's, raised in a collateral attack that does not raise a claim of a constitutional violation but merely a statutory violation, must show that the violation of the federal statute resulted in a "'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'" United States v. Timmreck, 441 U.S. 780, 784 & 785 (1979); Johnson-Howell v. McKune, 208 F.3d 226 (Table), 2000 WL 223561, at *3 (10th Cir. 2000). In addition, the petitioner must show prejudice from the alleged statutory error. Peguero v. U.S., 526 U.S. 23 (1999).

Petitioner's first argument, attacking the sentence as imposed, contends that the Sentencing Court failed to consider certain factors before imposing the sentence of restitution. Dkt. [7] at 5. To the extent Petitioner argues that the Sentencing Court had to consider his ability to pay before determining that he owed restitution and before determining the amount of restitution, Petitioner is simply wrong. In U.S. v. Futrell, 209 F.3d 1286, 1292 (11th Cir. 2000), the court held that

Lastly, we reject the Futrells' contention that the district court erred in failing to consider their ability to pay when ordering restitution. Under the MVRA, the amount of restitution is not discretionary. See Siegel, 153 F.3d at 1260. "The district court must order restitution in the full amount of each victim's losses without consideration of the defendant's economic circumstances." Id.; see 18 U.S.C. § 3664(f)(1)(A). The statute is clear. The district court is not required, nor does it have the discretion, to consider the offender's ability to pay when ordering restitution under the MVRA.

Accord Corley, 500 F.3d at 224-25 ("The court may not consider the defendant's economic circumstances when it calculates the amount of restitution, id. § 3664(f)(1)(A), but after setting the amount, the court 'shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid' in consideration of the defendant's current and anticipated financial situation."). To the extent that Petitioner argues the Sentencing Court failed to consider his ability to pay when it ordered the restitution due and payable immediately, we find that Petitioner has not shown prejudice, as is his burden. In his plea agreement, Petitioner specifically agreed to the terms that his restitution would be due and payable immediately. Petitioner received the benefit of his plea agreement, and he is obligated to abide by the terms of that plea agreement, so even if the Sentencing Court had not ordered his restitution due and payable immediately, he had already agreed that his restitution would be due and payable immediately. Phillips v. Booker, 76 F.Supp.2d 1183, 1195 (D.Kan. 1999)(denying Section 2241 petition and holding that "When a defendant knowingly bargains to make full restitution in exchange for dismissal of other pending counts, it should be 'presumed the bargain was made with its consequences in mind.' Moreover, it should also be 'presumed a defendant in those circumstances considered the financial burden a fair exchange for the penal advantage gained.' Petitioner agreed to pay full restitution and to payment of restitution through the IFRP as a part of his plea agreement, and received the benefits of that agreement."). Hence, the Sentencing Court's alleged failure to consider Petitioner's current and anticipated financial

situation simply did not prejudice him because quite apart from the Sentencing Court's order, he agreed, as part of his plea agreement, that his restitution would be due and payable immediately and thus, he independently obligated himself to his restitution being due immediately. Accordingly, we find that in his plea agreement, he waived any statutory right to have the Sentencing Court consider his financial situation. Hence, Petitioner suffers no prejudice from the alleged failure of the Sentencing Court to consider his ability to pay, and therefore, there is no basis to order relief under Section 2241.

As to Petitioner's other argument, he contends that the Sentencing Court delegated its core judicial function of setting forth a schedule of restitution payments to the BOP. Petitioner utterly fails to demonstrate any prejudice from this alleged unlawful delegation. In the absence of a claim that the Sentencing Court would not and/or could not have required Petitioner to pay $25.00 per quarter, which is what the BOP established, Dkt. [7] at 4, as Petitioner's payment toward his legal obligations, and there is no such claim, nor would any such claim be persuasive to this Court as the record stands,[4] Petitioner has failed, on this record, to show prejudice from the Sentencing Court's failure to set a schedule. Accordingly, this claim does not merit relief under Section 2241.

In light of the above, we are confronted with an unappealed, final order of the Sentencing Court, establishing a legal obligation of Petitioner that is due and payable immediately, which

---

[4] Given the procedural posture of this case, i.e., a Section 2241 petition with the burden on Petitioner to establish entitlement to relief, it would be Petitioner's burden to establish that the Sentencing Court could not have ordered a schedule of $25.00 per quarter while incarcerated. This amounts to roughly $8.33 per month or roughly $2.08 per week. Petitioner concedes that he earns $ 0.17 per hour in a job he works on the weekends. Dkt. [7] at 4. Petitioner also concedes that he receives money sent from his family. Id. In the absence of Petitioner's inmate trust account statements, showing exactly the amount of monies he has incoming to him, Petitioner cannot carry his burden to show affirmatively that the District Court could not have ordered a repayment schedule of $25.00 per quarter.

this Court has found to be invulnerable to Petitioner's Section 2241 attack because he failed to show a miscarriage of justice and/or prejudice from the alleged statutory errors committed by the Sentencing Court. Hence, for present purposes, and the remainder of the analysis, we have a valid final order of the Sentencing Court out of which arises a legal debt of Petitioner which is due and payable immediately.

### 3. Requiring Petitioner to pay his debts is not a miscarriage of justice.

This brings us then to Petitioner's second attack, which is aimed squarely at the execution of his sentence, wherein he argues that the BOP is without authority to deduct monies from his inmate trust account. This attack fares no better than the first. Given the analysis above, i.e., that Petitioner either cannot now and herein attack the imposition of the sentence of restitution, or that his attack on the imposition of his sentence is unpersuasive, the Sentencing Court's order of restitution is final and unassailable. What that final valid order does, inter alia, is make the payment of the restitution ordered due immediately. Hence, the restitution is a valid current debt of Petitioner. Thus, the question before the Court is whether the BOP has the authority to require Petitioner to honor that debt by making payments toward that debt. Petitioner contends that the BOP does not. Petitioner is wrong for several reasons as follows.

First, although a Section 2241 petition is the proper vehicle to bring an attack on the execution of a sentence, Section 2241 petition is a limited remedy. Although Petitioner's claim may be properly brought as an attack on the execution of his sentence,[5] it does not follow that

---

[5] See, e.g., United States v. Walker, 149 Fed.Appx. 55, 57 (3d Cir. 2005)("His challenge goes directly to execution of the sentence-namely, whether the BOP has authority to set the terms of the restitution payments while he is incarcerated. As such, the claim falls squarely within those properly raised in a petition for habeas corpus under § 2241."); Dominquez v. Bureau of Prisons, No. 5:06-CT-3088-FL, 2007 WL 4224329, at *2 (E.D.N.C. May 15, 2007)("The proper avenue for an inmate challenging participation in the IFRP program is through a petition for a writ of habeas corpus pursuant to 28 U.S.C, § 2241.") .

such a claim merits relief under Section 2241.  See, e.g., Williams v. Pearson, 197 Fed. Appx.

872, 877-79 (11th Cir. 2006).  Petitioner's argument is again that the BOP's actions in deducting

monies from his inmate account violates the MVRA, a statute.  Accordingly, to be entitled to

relief under Section 2241 for such statutory violations, Petitioner must establish a miscarriage of

justice.

In the Pearson case, the prisoner argued that the District Court's order for restitution

indicated that restitution was due and payable immediately, but also set a schedule of payments

once Petitioner was released from prison.  The prisoner argued that the BOP, who was deducting

money from the inmate's account in accord with the IFRP, was impermissibly setting its own

schedule in violation of the MVRA.   The Court rejected this contention and reasoned as follows:

> Next, Williams also argues that the BOP is not executing his sentence in
> conformity with the district court's order, resulting in wages being taken from
> him.  The Supreme Court has stated that, unless a habeas "claim alleges a lack of
> jurisdiction or constitutional error, the scope of collateral attack [is] ... limited," and "an
> error of law does not provide a basis for collateral attack unless the claimed error
> constituted 'a fundamental defect which inherently results in a complete miscarriage of
> justice.' "  United States v. Addonizio, 442 U.S. 178, 185 (1979). The same is true for
> errors of fact. Id. at 186. While Addonizio concerned a § 2255 challenge to a conviction,
> the Court has further stated that discretion is implicit in the statutory command that courts
> "dispose of the matter as law and justice require."  Stone v. Powell, 428 U.S. 465, 478 n.
> 11.  As Williams's challenge to the execution of his sentence under § 2241 is a
> non-constitutional challenge, we conclude that he is required to make a strong showing
> that the manner in which his sentence is being executed is resulting in a miscarriage of
> justice.
> Here, we doubt that the BOP is executing Williams's sentence
> inappropriately. The court's sentence directed Williams to immediately pay the
> special assessment and authorized the BOP to deduct appropriate sums from
> Williams's account while in confinement in accordance with the applicable BOP
> rules and regulations. It further ordered that, if there was any remaining unpaid
> balance on both the special assessment and restitution at the time of Williams's
> release, then Williams would have to pay a minimum of $200 per month
> beginning 60 days after the inception of his supervised release. The following
> page indicates that "[r]estitution is due and payable immediately." To that end,
> Williams signed a contract with the BOP to have 50% of his wages earned in
> prison applied to his two financial obligations-the assessment and restitution.
> Given the foregoing, and the fact that restitution was ordered due immediately, we

do not think that the BOP is improperly executing Williams's sentence in any way. Williams agreed to the program, and contrary to his opinion, the district court's schedule was not simply $200 per month only after he was placed on supervised release. Instead, the district court ordered immediate payment, with any remaining unpaid balance after Williams's release to be paid off at $200 per month.

The case that Williams believes supports his claim that the BOP is improperly using the IFRP to execute his sentence, specifically the restitution order, is United States v. Prouty, 303 F.3d 1249 (11th Cir. 2002). In Prouty, we interpreted the MVRA, which provides, in part, that "a restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). The MVRA also states that "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). S ection 3572 in turn provides that "[i]f the [restitution] order [ ] permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court...." 18 U.S.C. § 3572(d)(2). Based on that language, we held that "the MVRA precludes the district court from delegating duties expressly delineated in the statute," such as the duty to create a schedule for paying restitution. Prouty, 303 F.3d at 1255. The district court in Prouty ordered immediate repayment with an "informal understanding" that the probation office would set the schedule, and we held that the court's order did not comply with the MVRA's requirements that the court set the schedule. Id.

However, as Prouty points out, the MVRA provides that "[i]f the [restitution] order[ ] permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court...." 18 U.S.C. § 3572(d)(2). Therefore, if the restitution order does not permit other than immediate payment, the district court is not required to set the schedule. In Prouty, the intent of the district court was somewhat unclear, and it immediately delegated the repayment schedule to the probation office. Prouty, 303 F.3d at 1254. Here, the court clearly ordered the restitution to be due in full immediately, and, therefore, under the MVRA, was not required to schedule the payments.

Even assuming the court had not contemplated deducting funds for the purposes of paying of restitution, Prouty would not be applicable to the instant case. Prouty was a direct appeal in which the defendant clearly was challenging the district court's order of restitution as being in violation of the MVRA. From the record in this case, Williams has never directly appealed the court's actual restitution order. If he believed that the district court violated the MVRA by failing to set a schedule, his first remedy should have been to file a direct appeal, and his failure to raise the issue on direct appeal renders the claim procedurally defaulted. Dohrmann v. United States, 442 F.3d 1279, 1280-81 (11th Cir. 2006) (holding that a prisoner procedurally defaulted on his § 2241 challenge to the district court's initial calculation of restitution).

Williams's real claim, however, is that the BOP is improperly executing the district court's order. Since there is no constitutional violation in the BOP's

actions, and clearly Williams cannot challenge the district court's entire judgment in this § 2241 motion, the issue is whether or not the BOP's actions constitute a miscarriage of justice. Williams is required to pay restitution as part of his judgment, and the BOP's actions in deducting sums of money to put toward Williams's financial obligation simply do not result in any miscarriage of justice. If Williams truly believes that prison officials are violating his constitutional rights through their actions, he may file a lawsuit against them seeking damages under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). <u>See</u> <u>Behrens v. Regier</u>, 422 F.3d 1255, 1263 n. 15 (11th Cir. 2005).

We, therefore, conclude that the district court's order dismissing Williams's § 2241 is due to be affirmed because Williams has not stated a cognizable claim.

<u>Williams v. Pearson</u>, 197 Fed.Appx. 872, 877-79 (11th Cir. 2006). <u>See</u> <u>also</u> <u>United States v. Timmreck</u>, 441 U.S. 780, 784 & 785 (1979)("collateral relief is not available" without a showing that the violation of the federal statute resulted in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure.").

While the fourth paragraph of the <u>Pearson</u> opinion quoted above is inconsistent with the reasoning of <u>Corley</u> and, therefore, cannot be of any persuasive value in the present case, the remainder of the quote is persuasive and for the reasons stated therein, the Court recommends dismissal of the petition herein as Petitioner has not established a miscarriage of justice. He owes a debt and the BOP has encouraged him to begin to satisfy that debt by offering him privileges, should he do so and by removing those privileges, should he not fulfill his legal debts. Whatever the meaning of a "miscarriage of justice" or "rudimentary demands of fair procedure" in this context, requiring one to fulfill one's obligations cannot, and indeed, ought not constitute a miscarriage of justice nor violate the rudimentary demands of fair procedure. <u>Cf.</u> <u>United States v. Sawyer</u>, 521 F.3d 792, 797 (7th Cir. 2008)("it is difficult to understand how a judicial order that does no more than require a defendant to pay what he owes could undermine the fairness, integrity, or public reputation of judicial proceedings.") Hence, Petitioner has not carried his

burden under Section 2241 to show entitlement to relief because to do so he must show a miscarriage of justice and the fact that the BOP is deducting monies from his account to pay debts that he indisputably owes and that he agreed to pay in accordance with BOP regulations, both in his plea agreement and in his IFRP contract, simply does not establish a miscarriage of justice.

This is true notwithstanding Petitioner's argument that the BOP lacks authority to deduct monies from his account because, in fact, the BOP has multiple sources of authority for collecting the debts Petitioner owes even if the Sentencing Court's order was flawed under Corley.

> (a) *The BOP has authority to collect Petitioner's debts,*
> *hence, no miscarriage*

While the rule in this Circuit may be that a United States District Court cannot: (1) delegate its duty under the MVRA by ordering the restitution to be due and payable immediately and (2) thereafter, permit the BOP to collect that presently owing debt according to the IFRP, this certainly is not the universal rule in all Circuits. See, e.g., United States v. Sawyer, 521 F.3d 792, 794 - 95 (7th Cir. 2008). Moreover, even in Circuits, like the Third, where the rule is that the Courts cannot delegate their duty to the BOP to set up a schedule of payments, it does not follow as a matter of law or logic that if a District Court failed to comply with its duty to set a schedule, then the BOP has no authority to deduct monies from an inmate account for those debts that an inmate has. For example, in the Eleventh Circuit, the Circuit in which Petitioner was tried and convicted and sentenced, the rule is that a District Court may not delegate its duty to set forth the amount of restitution and the schedule of payments. United States v. Prouty, 303 F.3d

1249 (11th Cir. 2002).[6]   Nonetheless, in two unpublished cases, the Eleventh Circuit denied relief

to prisoners who challenged the BOP's authority to take money out of their prison accounts and

who had argued that the BOP was not authorized to take out monies from their prison accounts.

See, e.g., Williams v. Pearson, supra; United States v. Frazier, 144 Fed.Appx. 766 (11th Cir.

2005).   Thus, it is clear that just because a sentencing court errs in its ordering of restitution, it

does not follow that the BOP is without authority to collect on that restitution debt or that the

BOP is authorized to ignore such an outstanding sentencing court's order.

    Furthermore, because Petitioner failed to attack the Sentencing Court's order of

restitution at the time he should have, i.e., on direct appeal, he has procedurally defaulted those

claims.   Williams v. Pearson, 197 Fed.Appx. at 878 ("If he believed that the district court

violated the MVRA by failing to set a schedule, his first remedy should have been to file a direct

appeal, and his failure to raise the issue on direct appeal renders the claim procedurally

defaulted.").

    Hence, for present purposes, there is an uncontested, and indeed, uncontestable (at least in

the present proceedings) final order of restitution, which, under the Circuit law governing the

---

[6]  In Prouty, the Eleventh Circuit interpreted the MVRA, which provides, in part, that "a restitution order
may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals,
in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C.
§ 3664(f)(3)(A). The MVRA also states that "the court shall, pursuant to section 3572, specify in the
restitution order the manner in which, and the schedule according to which, the restitution is to be paid."
18 U.S.C. § 3664(f)(2). S ection 3572 in turn provides that "[i]f the [restitution] order [ ] permits other
than immediate payment, the length of time over which scheduled payments will be made shall be set by
the court...."  18 U.S.C. § 3572(d)(2).  Based on that language, The Eleventh Circuit Court held that "the
MVRA precludes the district court from delegating duties expressly delineated in the statute," such as the
duty to create a schedule for paying restitution. Prouty, 303 F.3d at 1255. The district court in Prouty
ordered immediate repayment with an "informal understanding" that the probation office would set the
schedule, and the Eleventh Circuit held that the court's order did not comply with the MVRA's
requirements that the court set the schedule. Id.

Sentencing Court's order is a valid order of restitution. Confronted with such a scenario, the only viable argument Petitioner has is that the BOP has no authority to deduct monies from his account to enforce his obligation to pay notwithstanding the now unchallengeable final Court order from which the debt arises. Petitioner fails to establish that the BOP has no such authority, as is his burden. Riggs v. Federal Bureau of Prisons, Civ.A. No. 5:06-cv-00687, 2007 WL 1655240, at *3 (S.D.W.Va., June 6, 2007)("The petitioner carries the burden of proving he is entitled to habeas corpus relief under 28 U.S.C. § 2241 ."). Although, Petitioner does contend that the BOP is not authorized to remove funds from his inmate account in order to pay his restitution, Petitioner is wrong; the BOP has multiple sources of authorization for doing so. Among the sources of these authorizations are the following.

The BOP has independent statutory authority to collect the legal debts of its prisoners and has effectuated that independent authority via promulgation of the IFRP. As Judge Easterbrook, writing for the court, persuasively held in United States v. Sawyer, 521 F.3d 792, 794 - 95(7th Cir. 2008), the BOP

> does not need judicial permission to remit money from a prisoner's account, with or without the prisoner's assent. It has ample authority to set the terms on which inmates are held. Whether inmates make any money during their captivity, and, if they do, how much must be paid to creditors, are subjects well within the authority of the Executive Branch. See 28 C.F.R. § 545.11 and Program Statement P5380.08 (amended Aug. 15, 2005), which set out the details of the Inmate Financial Responsibility Program.
>     Courts are not authorized to override the Bureau's discretion about such matters, any more than a judge could dictate particulars about a prisoner's meal schedule or recreation (all constitutional problems to the side). Prisoners dissatisfied with a warden's administration of the Inmate Financial Responsibility Program may appeal within the Bureau of Prisons, see 28 C.F.R. § 545.11(d), and may be able to obtain judicial review of the Bureau's final decision under the Administrative Procedure Act. 5 U.S.C. § 702. Review under the APA is not plenary; it is limited to a search for legal errors and arbitrary application. 5 U.S.C. § 706(2). Limits created by the APA cannot be evaded by issuing a peremptory direction to the Bureau of Prisons as part of the judgment of conviction. What a court is not entitled to do it is certainly not required to do.

19

Accord United States v. Young, 533 F.Supp.2d 1086, 1088 (D. Nev. 2007)("The BOP's authority to administer the IFRP is independent of the sentencing court's duty to schedule restitution payments."); Hudson v. True, NO. 97-3347, 1999 WL 1285832, at *2 (D.Kan., Dec. 23, 1999).[7]

Indeed, the Congress of the United States has provided that

An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or

---

[7]   The Hudson Court noted that

The basis for the BOP's authority to operate the IFRP was clearly explained in Prows v. Dept. of Justice, 938 F.2d [274] at 275 [D.C. Cir. 1991]:

> The Bureau ... has been given explicit statutory authority to 'have charge of the management and regulation of all Federal penal and correctional institutions' and to 'provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.' 18 U.S.C. § 4042. Even more broadly, the Attorney General has been given statutory authority to provide for the 'proper government, discipline, treatment, care, rehabilitation, and reformation' of all federal inmates. Id. at § 4001. This specific statutory authority has, in turn, been delegated to the Bureau of Prisons. See 28 C.F.R. § 0.96(q)....
>
> The (IFRP) ... falls within the Bureau's authority to provide for ... the rehabilitation and reformation of federal inmates....

In Johnpoll v. Thornburgh, 898 F.2d 849, 850-851 (2d Cir.), cert. denied, 498 U.S. 819 (1990), the IFRP was also upheld because it "serves a valid penological objective of rehabilitation by facilitating repayment of debts," and "is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation." See also James v. Quinlan, 866 F.2d 627, 630 (3d Cir.), cert. denied, 493 U.S. 870 (1989); Prows, 704 F.Supp. at 274-75; Muhammad v. Moore, 760 F.Supp. 869 (D.Kan.1991). The Johnpoll court concluded that the BOP "has not exceeded its statutory authority, nor departed from its own regulations, by administering a program to collect court-ordered" fines." Johnpoll, 898 F.2d at 851; see also United States v. Gomez, 24 F.3d 924, 926 (7th Cir. 1994) (prison trust accounts may be tapped to pay fines).

Hudson v. True, 1999 WL 1285832, at *2.

20

(ii) by all other available and reasonable means.

18 U.S.C. § 3664(m)(1)(A)(i) - (ii).  We find that the IFRP is an "other available and reasonable means" by which to enforce the Sentencing Court's order of restitution.   Hence, it is clear that the United States through the BOP has ample statutory authority to enforce debts owed by prisoners, including specifically, restitution debts.

> We are aware that the Court of Appeals for the Third Circuit has said that

> Although we recognize that federal regulations permit the Bureau of Prisons to make payment schedules for all monetary penalties, see 28 C.F.R. § 545.10, the plain language of the MVRA, vesting sole authority in the district courts, see 18 U.S.C. § 3664(f)(2) ("[T]he court shall ... specify ... the manner ... and the schedule ... [of] restitution"), contradicts, and thus overrides, the regulations.

United States v. Coates, 178 F.3d 681, 685 (3d Cir. 1999).   Coates, like Corley, was decided in a direct appeal and the remedy afforded in both of those cases was to vacate the District Court's sentence of restitution and remand for resentencing and,for the reasons explained above as to why Corley is not controlling herein, neither is Coates.   The Court in Coates did not consider the significance of 18 U.S.C. § 3664(m)(1)(A)(i) - (ii) in independently permitting the BOP to collect prisoner's debts.  In fact, the questions before those courts were essentially what may or may not a District Court do when sentencing a convict to pay restitution.  Those Courts did not answer the question before this Court, namely, irrespective of what a District Court may or may not do in sentencing convicts to pay restitution, what may or must the BOP do when confronted with a final unappealable order of a District Court that imposed a sentence of restitution on a convict and required that the restitution be due and payable immediately.   While it may be true that the Third Circuit Court's interpretation of the MVRA does not permit the District Court to do what the Sentencing Court did herein, it does not follow that the BOP, which is confronted with a final unappealable order of the Sentencing Court, may not or must not enforce that order.  In the face

of such an order, and given its statutory authority to rehabilitate prisoners and to enforce an order of restitution by reasonable means, the BOP was authorized to deduct monies from Petitioner's account by Congressional statute.

Put another, but conceptually equivalent, way, as we read the precedent, the Third Circuit cases of Coates and Corley stand for the proposition that a District Court's order of restitution, which directs the restitution is due and payable immediately but fails to set up a schedule of payments constitutes a "voidable" order and hence, on direct appeal, should be vacated and remanded to correct the voidable order of restitution. However, once the voidable order is not appealed, and becomes a final unappealable order, the BOP, when faced with such an order, is bound to give it effect because although voidable at one time, the "flawed" order no longer is voidable nor is it void and hence, it must be complied with. Mere failure on the part of a sentencing court to comply with the statutory requirement (as interpreted by the Third Circuit Court) to set forth a schedule of payments does not render the order void but merely voidable. This is a long standing and pedigreed principle of the law as the Seventh Circuit Court of Appeals explained so succinctly:

> The courts early distinguished between the effect of void and voidable orders. 'The principle is too well settled, and too plain to be controverted, that a judgment of (sic) decree pronounced by a competent tribunal, against a party having actual or constructive notice of the pendency of the suit, is to be regarded by every other co-ordinate tribunal; and that if the judgment or decree be erroneous, the error can be corrected only by a superior appellate tribunal. The leading distinction is between judgments and decrees merely void, and such as are voidable only; the former are binding nowhere; the latter everywhere, until reversed by a superior authority.' Hollingsworth v. Barbour, 4 Pet. 466, 471, 7 L.Ed. 922.

Minneman v. Federal Land Bank of Louisville, 105 F.2d 363, 365 (7th Cir. 1939). Accord Thornton v. Carter, 109 F.2d 316, 320 (8th Cir. 1940)("A judgment which is wrong, but unreversed, is as effective as a judgment which is right."); Sun Indemnity Co. of New York v.

U.S., 91 F.2d 120, 121 (3d Cir. 1937)("The District Court had jurisdiction of both the subject-matter and of the parties and however erroneous a judgment entered under such conditions may be, it is not void, but is a valid and conclusive judgment upon the parties. If the judgment was erroneous, it should have been attacked directly by an appeal. No appeal was taken and the judgment is therefore in the position of any other rendered in a term which has now expired. It is well settled that in such cases a District Court is without jurisdiction to open or vacate a judgment. The fact that the judgment was erroneous makes no difference.")(citations omitted).

Because the order of restitution is not a void order, (even considering the inability of a sentencing Court to delegate the setting of schedules for repayment of restitution), the Sentencing Court's unappealed final order of restitution created a legal debt on the part of Petitioner. As a legal debt of Petitioner's, the BOP may, in compliance with its independent statutory authority, promote Petitioner's rehabilitation and/or may enforce the debt, by requiring that Petitioner make payments toward that debt, even if the Sentencing Court failed to set a schedule of payments in accordance with the Third Circuit Court's rule in Corley.

As the Respondent argues, confronted with a final order of restitution that was unappealed and is essentially now unchallengeable, and which order is entirely in conformity with governing Circuit law of the Sentencing Court, and which order is not void under the law of this Circuit, but merely voidable via the appropriate procedures (such as via a direct appeal), the BOP has no choice to second guess the validity of the order and is simply required to enforce such order to the extent it is able. Dkt. [25] at 5 ("The BOP's role in the execution of restitution is ministerial. It is not authorized or even qualified to make independent determinations regarding the legality of duly-imposed restitution orders."). To reiterate, the BOP is correct that

23

when confronted with a final unappealed order of a Court, the BOP must simply enforce that order, even if that order would be reversible under the law of the Third Circuit if it had been appealed.  See, e.g., Atchley v. Greenhill, 517 F.2d 692, 693 (5th Cir.  1975)("If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Until and unless so reversed or modified, it would be an effective adjudication.").

Alternatively, even if the BOP did not have independent statutory authority to enforce Petitioner's legal debts, which arose from a final unappealed court order, Petitioner himself provided the BOP with such authority to collect the funds, not once but twice.  He first provided authority to the BOP to do so when he entered into his plea agreement.  Phillips v. Booker, 76 F.Supp.2d 1183, 1195 (D.Kan. 1999)(denying Section 2241 petition and holding that "When a defendant knowingly bargains to make full restitution in exchange for dismissal of other pending counts, it should be 'presumed the bargain was made with its consequences in mind.' Moreover, it should also be 'presumed a defendant in those circumstances considered the financial burden a fair exchange for the penal advantage gained.' Petitioner agreed to pay full restitution and to payment of restitution through the IFRP as a part of his plea agreement, and received the benefits of that agreement.").  Hence, the BOP had independent authority to withdraw funds from his account because he voluntarily agreed to such as part of his plea agreement when he agreed to inter alia, that "the custodial agency . . . will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. . . . [and] to cooperate fully in efforts to collect the fine and/or restitution obligation by set-off program payments . . . and any other means the Government deems appropriate."  (Plea Agreement quoted *supra*).

Hence, notwithstanding the fact that the Sentencing Court, i.e., the Northern District of Georgia may have not carried out the duties which the Third Circuit Court finds non-delegable in Corley, it does not follow that the BOP was without authority to deduct funds from Petitioner's account. To the extent that it may be said the Third Circuit Court's construction of the MVRA creates a right in the prisoner, who was sentenced to pay restitution, to have the court set a schedule of payments and, to the extent that it may be said the United States District Court for the Northern District of Georgia did not abide by this "right," we find this "right" to have been waived in Petitioner's plea agreement. If the most precious of constitutional rights can be waived, and they can, there is no apparent reason why the MVRA statutory "right" of a prisoner to have the Court set a payment schedule cannot also be waived.

Petitioner provided yet another independent source of authority to the BOP upon which the BOP could rest its authority to collect funds from his account to meet his obligation to pay his restitution when Petitioner entered into the IFRP contract with BOP and, for a second time, granted the BOP permission to do what it did. See, e.g., Mitchell v. United States, NO. Civ.A. C-05-361, 2005 WL 3445607, at *5 (S.D. Tex. Dec. 15, 2005).[8] United States v. Young, 533

---

[8]  The Mitchell Court held as follows:

> Finally, the uncontested summary judgment evidence establishes that plaintiff twice signed contracts consenting to the monthly withdrawals from his inmate account for restitution payments by FCI-Three Rivers. See (D.E. 22, Exs. C at 19 & D).
> Pursuant to federal criminal law, "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1); see also 18 U.S.C. § 3664(f)(2) (the court shall specify pursuant to 18 U.S.C. § 3572 the schedule according to which restitution is to be paid).
> Plaintiff claims that the BOP lacks the authority to set a payment schedule for his court-ordered restitution. (D.E. 27 at 6). He relies on United States v. Mortimer, 94 F.3d 89 (2d Cir. 1996) and United States v. Miller, 77 F.3d 71 (4th Cir. 1996). Id. However, neither of these cases addresses the enforcement of an IFRP. Instead, they stand for the proposition that a district court cannot delegate a judicial function, such as

F.Supp.2d 1086, 1088 (D. Nev.  2007)("The Court will not insert itself into a voluntary agreement between Defendant and the BOP to meet that obligation" of paying his restitution).

Petitioner argues that this third basis for the BOP's authority to deduct funds from his account, i.e., his signing of the IFRP contract, was invalid because coerced due to adverse consequences attached to withdrawing from the IFRP program.  This Court is unconvinced.  See, e.g., Dominquez v. Bureau of Prisons, NO. 5:06-CT-3088-FL, 2007 WL 4224329, at *2 (E.D.N.C. May 15, 2007);[9] Solis v. Menifee, No. 99 CIV. 9072 , 2000 WL 1401633, at *2 (S.D.

---

the timing and amounts of restitution payments or the setting of a payment schedule for court imposed special assessments, to a nonjudicial entity such as the BOP or a probation officer.  See also United States v. Albro, 32 F.3d 173, 174 n. 1 (5th Cir.1994) (per curiam) (unauthorized delegation of authority to determine restitution payment schedule from Article III judicial officer to non-Article III official affected substantial rights of defendant and constituted plain error).

In this case, Judge Nowlin's original restitution orders did not require plaintiff to participate in an IFRP, nor did they require the BOP to set up a payment schedule. See (D.E.22, Ex. A-5, A-11).  Rather, Judge Nowlin ordered that plaintiff pay restitution and cooperate fully with the BOP in making full payment of the restitution.  Id.  Plaintiff voluntarily participated in the IFRP, and in doing so, received certain benefits not available to non-participants.  See (Ex. C at 19, Ex. D).  Therefore, it is respectfully recommended that this claim is without merit.

Id., at *5.

[9]  The Dominquez court held as follows:

Petitioner alleges that he is being coerced into participating in the IFRP program.  Petitioner appears to base this argument on the fact that refusal to participate in the program results in the loss of certain privileges. (Pet.'s sur-reply p. 3.)  However, there is no constitutional right to any of the privileges afforded inmates who participate in the IFRP.  See Williams v. Farrior, 334 F.Supp.2d 898, 904 (E.D.Va.2004), affd, 122 Fed. Appx. 65 (4th Cir.2005).  Because there are no constitutional rights stemming from privileges afforded under the IFRP, petitioner is unable to state a constitutional claim based upon the potential loss of those same privileges.

Although it appears that petitioner's coercion argument is based entirely on his loss of privileges argument, the court notes that there is no other evidence of coercion in the record. Instead, the record reveals that petitioner has been instructed by respondent that the IFRP is voluntary and that he may refuse to participate at any time. (Compl.Ex. 6f.) For these reasons, petitioner's coercion argument is without merit.

N.Y. Sept. 25, 2000).[10]  Moreover, even if Petitioner could establish that this third basis for the

BOP's authority was flawed, such would leave untouched the other two bases for the BOP's

authority, i.e., its independent statutory authority and Petitioner's consent in his plea agreement.

Lastly, even if Petitioner could bring this challenge to the BOP's conduct via a section

2241 petition, and even if he had established a miscarriage of justice so as to prohibit the

restitution payments, and even if he had a right to not have **restitution** deducted from his inmate

account, and even if he could not waive that right, still, the BOP was authorized to deduct funds

from his account in order to pay his special assessment of $300.00.  This is because the special

assessment was not imposed under the MVRA and hence is not subject to the language of

MVRA which the Third Circuit Court of Appeals held requires sentencing courts to set a

---

Id., at *3

[10]  In Solis, the inmate therein

> claim[ed] that he was "coerce[d]" into participating in the IFRP and that future installment payments should thus be set aside or deferred.  See Petition at 3.  Solis argues that his participation was coerced because his refusal to so participate would have incurred "consequences" such as loss of housing privileges.  See id.  It is true that for inmates electing not to participate in the IFRP, the consequences of non-participation may be the loss of favorable housing privileges, non-assignment to work details outside the secure perimeter, or non-authorization of a release gratuity.  See Quay Decl. at ¶ 6. It is perfectly understandable that this arrangement, characterized by the government as "voluntar[y]," (Government's Memorandum of Law at 2), does not seem so to the prisoner.  But it is within the Bureau's discretion to decide that a prisoner who does not choose to participate in a program designed to help him meet his obligations is not a good candidate for certain privileges or rehabilitation programs.  The IFRP has been uniformly upheld against similar challenges, and the Second Circuit has found the regime "fully consistent with the Bureau of Prison's authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation." Johnpoll, 898 F.2d at 851 (citation omitted).
>
> Consequently, though Mr. Solis faces the loss of some privileges should he forego participation in the IFRP, those consequences do not fall under the scope of this Court's review pursuant to 28 U.S.C. § 2241.

Id.

schedule of payments.  Unlike the MVRA, the statutory authority for imposing a special assessment does not require the Court to set up a schedule and so, even in the absence of any such court imposed schedule of payments, the BOP was authorized to deduct monies from his account at least until the special assessment was collected in full. The court notes that Congress provided for an order of priority in which criminal penalties are to be collected, and that order of priority requires that special assessments be collected before restitution. 18 U.S.C. § 3612(c). Hence, at the time of filing of this habeas petition, i.e., September 6, 2006, the date he signed his IFP application and thereafter sent the IFP application together with the habeas petition in the mail, the BOP's taking any monies out of his account could be and should be, under 18 U.S.C. § 3612(c), attributable to the payment of his special assessment obligation, something that is not subject to the MVRA's mandatory language as construed in <u>Corley</u>.[11]  <u>See</u>, <u>e.g.</u>, <u>U.S. v. McCarroll</u>, 166 F.3d 1202 (Table), 1998 WL 852914, at *1 (2d Cir. 1998).[12]  As special assessments are properly treated as fines for purposes of collection, and since fines (and hence, special assessments) are not subject to the requirement of the MVRA that the courts "shall" set a

---

[11]    The court notes that this rationale would not be valid after March 7, 2007 when Petitioner, or someone on his behalf, apparently paid the entire amount of the special assessment via money order. Dkt. [20-2] at 18 to 19.

[12]    The <u>McCarroll</u> Court held as follows:

> In his brief on appeal, McCarroll acknowledges that his special assessments were due immediately. Accordingly, there has been no improper delegation by the district court of its exclusive authority to determine a schedule for the payment of those assessments. Instead, the BOP is merely using the IFRP to *collect* McCarroll's special assessment, just as it would any other delinquent debt owed by him. And the BOP's collection of McCarroll's special assessment is entirely proper, since (1) 18 U.S.C. § 3013(b) provides that special assessments are to be collected in the same manner as criminal fines, (2) 18 U.S.C. § 3612(c) authorizes the Attorney General to collect criminal fines, and (3) the latter provision does not preclude the Attorney General from delegating that authority to the BOP, an agency under her direction. See 18 U.S.C. § 4042.

<u>Id.</u>

28

schedule of payments, it is of no significance that the Sentencing Court herein failed to set a schedule since the Sentencing Court was not required to do so even under Third Circuit precedent.  See, e.g., Harris v. Schultz, No. Civ. 05-5081, 2006 WL 2864635 (D.N.J. Oct. 3, 2006);[13] Soukas v. Daniels, No. CV 07-1044-MA, 2008 WL 482876, at *2 (D. Or. Feb. 19, 2008)("Petitioner contends the BOP's collection of these payments contravenes the Mandatory Victims Restitution Act of 1996 . . . . However, the MVRA only requires the sentencing court to set a payment schedule for payment of restitution, not felony assessments and other criminal monetary penalties.  In Montano-Figueroa v. Crabtree, 162 F.3d 548, 550 (9th Cir. 1998) (per curium), the Ninth Circuit found that the MVRA did not pose an impediment to the district court's delegation of 'scheduling of payments of fines' to the BOP, as the MVRA only deals with restitution payments.  Thus, the BOP does have authority to set a schedule for payment of criminal monetary penalties other than restitution.").

Accordingly, for any of the foregoing reasons, this petition should be dismissed.[14]

_____

[13]   The Court in Harris v. Schultz reasoned that

> This Court observes that the Third Circuit based its ruling in Coates on the mandatory language in § 3664(f)(2) providing that the district court "shall" set a restitution schedule in the order of restitution. However, unlike § 3664(f)(2), § 3572 does not specify that the order for a fine "shall" include a payment schedule. Rather, § 3572 gives the sentencing court the option of permitting payments in installments. See 18 U.S.C. § 3572(d)(2) ("If the judgment, or, in the case of a restitution order, the order, permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court ..."); 18 U.S.C. § 3572(d)(3) ("A judgment for a fine which permits payments in installments ..."). Thus, Coates does not govern an order for a fine, and does not preclude the BOP from setting a schedule for payment of the fine pursuant to the Inmate Financial Responsibility Program.

Id., at *6.

[14]  Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement.  United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).  Hence, no recommendation is made in this respect.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections by July 18, 2008 and responses are due seven (7) days thereafter in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/   *Amy Reynolds Hay*
United States Magistrate Judge


Dated: July 1, 2008


cc:     The Honorable Arthur J. Schwab
        United States District Judge

        Christian Nlandu Mbengo
        56786-019
        Moshannon Valley Correctional Center
        555 Cornell Drive
        Philipsburg, PA 16866

        All Counsel of Record via CM-ECF